49234. HAMMONDS v. JACKSON et al.

EBERHARDT, Presiding Judge.
This is a slip and fall case, the fall occurring on the floor of a dance hall by one of its customers while engaged

in dancing and resulting in injury to her ankle. She brought suit against the owner and the operator of the dance hall, known as the Egyptian Ballroom in the Fox Theatre building, alleging that while engaged in dancing she had hit an unusually slick spot on the waxed floor and slipped and fell.

Plaintiff's deposition was taken and she testified that she had danced "all over the floor" before hitting the spot that caused her fall. From 150 to 200 patrons were in attendance and all were generally dancing. The admission charge had been two dollars. Beer is sold at the place and some was purchased by members of plaintiff's party of six. It is what is known as a "brown bag" place where patrons are allowed to bring in bottles of whiskey and buy setups of ginger ale, etc. for mixing their own drinks. Plaintiff's party did have one or two bottles of whiskey and prior to the time she fell plaintiff had had two mixed drinks and prior to coming drank a beer, but that she was not "under the influence."

Mrs. Bernice Norris, a member of plaintiff's party at the dance, testified by deposition that all had had some drinks, that plaintiff fell while she and her partner were dancing a sort of fast dance on the floor, that there were something like 200 people present and no one else fell. She did not actually see plaintiff fall, but saw her very shortly afterward when she was brought to the table which the party was using, and then carried to the hospital. She danced, but knew nothing of any unusually slick spots on the floor, and saw no foreign substances on it. The floor was waxed, and had been each time she had been there for dancing.

Mrs. G. A. Jackson, operator of the establishment, testified by affidavit that she was personally present on the occasion when Mrs. Hammonds fell, that she went immediately to the place where she fell and looked to see whether anything was present on the floor that could have caused it, and saw nothing. There was no rubbish or trash on the floor, "nor did I observe any unusual slick spots on the floor." She personally supervised the cleaning of the floor each week, and there had been no build-ups of wax or slick spots on it. The floor was waxed only twice each year, once in January and once in June

when it is done by application of shaved paraffin, and at the time Mrs. Hammonds was injured on September 16, 1972 there had been no application of the paraffin or other waxing material since the previous June. She had been operating the place for ten years, and in all that time no liquid wax of any kind had ever been used. Mrs. Hammonds was the only person in that time who had ever been injured on the floor. No one else fell at anytime during the evening when Mrs. Hammonds was injured.

Defendants moved for summary judgment and tendered this evidence in support of it. The motion was sustained and plaintiff appeals. *Held:*

1. A careful search of the cases decided by the appellate courts of this state reveals, so far as we have found, that dance halls have been involved in slip and fall litigation on appeal only four times. The first was *Tybee Amusement Co. v. Odum,* 51 Ga. App. 1 (179 SE 415), which was decided on the basis of a defect in construction, i. e., a difference in floor level together with a keeping of the place very dimly lit. It had nothing to do with the condition of the dance floor; and plaintiff did not fall on the floor but when stepping off of it. The second was *Sheraton Whitehall Corp. v. McConnell,* 88 Ga. App. 725 (77 SE2d 752), which again alleged a sloping board at the edge of the floor, which itself was polished, and on which plaintiff stepped and fell. This case did not deal with the condition of the dance floor itself. *Robinson's Tropical Gardens, Inc. v. Sawyer,* 105 Ga. App. 468 (125 SE2d 131) found a jury issue relative to the condition of a corridor in which plaintiff had fallen adjacent to the dance floor. In *Ward v. Veterans of Foreign Wars,* 109 Ga. App. 563 (136 SE2d 481) the fall resulted from some liquid which had been spilled on the dance floor and allowed to remain. In none of them did the fall occur on the dance floor itself, as here, without the presence of some foreign substance to cause it, and none dealt with the problem of an alleged "slick spot" on the floor which the plaintiff concludes resulted from waxing.

Our examination of authorities generally on this subject reveals that "courts have recognized as applicable to actions by patrons against dance hall proprietors or operators for injuries resulting from the condition of the

premises the view (1) that an owner or occupier of premises is not the insurer of the safety of his invitees, but rather is liable only for his failure to exercise reasonable care to avoid reasonably foreseeable danger to his invitees by keeping the premises in a reasonably safe condition for use in a manner consistent with the purposes of the premises, or by warning of hidden dangers or unsafe conditions insofar as they can be ascertained by reasonable inspection and supervision; (2) that inasmuch as the basis of his liability is his superior knowledge of an unreasonable risk of harm which the patron either does not or, in the exercise of ordinary care, should not know, the owner or occupier is not liable for injuries resulting from a condition which is readily observable and which should have been seen and appreciated by the invitee before he exposed himself to it, and in such circumstances there is no duty to warn, because the invitee has the information which would be conveyed by a warning; and (3) that where injuries result from an extraneous object or substance on a floor, it must be shown either that the owner or occupier, or his employees, placed the extraneous substance there or, if the substance was placed by someone else, that the owner or occupier, or his employees, had actual knowledge of the presence of the substance, or that it had remained in a position of danger for such a length of time that the owner or occupier, or his employees, should have had knowledge of the substance and removed it or given proper warning of its presence." Anno. 38 ALR3d 419, 422, § 2.

Negligence cannot be predicated on the slipperiness of a dance floor alone, for wax and like substances are applied to make it slippery and thus the better for dancing. It is a preparation for dance floors generally made everywhere they are found and used. Nolan v. North Hills Golf Club, 21 App. Div. 2d 695 (250 NYS2d 471). In order to recover the injured patron must show the use of improper materials or the negligent application of the material used. Patrons are usually held to accept the risk of dancing on a floor which they know has been prepared for dancing by the application of wax or some like substance. Durden v. Dranetz (Fla. App.), 99

S. 2d 716; Fishman v. Brooklyn Jewish Center, 234 App. Div. 319 (255 NYS 124).

Although it appears that the lights were dimmed during the dancing, this is a practice of dance halls everywhere. People go to places where stimulating music is played and the lights are low for dancing. Plaintiff knew of this, as did all others engaged in dancing. It has been held that one who voluntarily goes into a dimly lighted area assumes the risk of injury which may result because of it. *Mattox v. Atlanta Enterprises,* 91 Ga. App. 847 (87 SE2d 432); *Hendricks v. Jones,* 28 Ga. App. 335 (111 SE 81); *Flournoy v. American Hat Mfg. Co.,* 21 Ga. App. 599 (94 SE 835); *Lebby v. Atlanta Realty Corp.,* 25 Ga. App. 369 (103 SE 433); *Avary v. Anderson,* 31 Ga. App. 402, 404 (120 SE 683); *Frierson v. Mutual Realty Co.,* 48 Ga. App. 839 (174 SE 144). This applies particularly to the situation when one goes to a dimly lighted dance hall for dancing, where he knows both of the lighting condition and the polished floor.

The standard of care imposed by Code § 105-401 upon the owner or occupier of premises is that of ordinary care to keep the premises safe. The Supreme Court has held that in this context the duty is measured by what the prudent man would do under the circumstances, and that whether in terms of "reasonable care," or "ordinary care," in keeping the premises "safe" or "reasonably safe" it is the same. See *Smith v. Ammons,* 228 Ga. 855 (188 SE2d 866). The owner or occupier is not an insurer of the safety of his customers, guests or invitees.

"It would impose too great a duty upon the proprietor . . . and would make him the insurer of the safety of all patrons, which he is not, to require him at all times to have immediate knowledge of and to remove every article on which a patron might stumble and fall when the article is placed there, not by the defendant or its employees, but by other patrons." *Jones v. West End Theatre Co.,* 94 Ga. App. 299, 303 (94 SE2d 135). See also *Holloman v. Henry Grady Hotel Co.,* 42 Ga. App. 347 (156 SE 275); *Scott v. Rich's, Inc.,* 47 Ga. App. 548 (171 SE 201); *Hill v. Davison-Paxon Co.,* 80 Ga. App. 840 (57 SE2d 680).

2. Plaintiff herself alleges nothing more than a

"slick spot" on the dance floor. She makes charge of no foreign substance on the floor and testifies that she saw none. Her testimony was "this one spot was — *must have been* mighty slippery, heavy wax or something. *I don't know,* but it sure tripped me." This statement is a mere conclusion, and is without probative value, even in summary judgment proceedings — *Stubbs v. State Farm Mut. Auto. Ins. Co.,* 120 Ga. App. 750, 756 (172 SE2d 441). And later she explained that "Bill Robey told me that he told them that the floor was extra slippery there in one spot and he had told them before about that one place . . . I don't know who he told it to . . . only thing I know, the floor was extra slippery with wax in that one spot. And I had danced all over that floor. As far as I know I didn't come in contact with a foreign substance, unless it was wax." This double hearsay could not be held to be notice of the slippery spot to the management. She also stated that at the time she was dancing with a partner, that they were back to back doing a sort of fast dance "like the teenagers do" when suddenly she slipped, lost her balance and went down to the floor. Her partner had tried to catch her but could not. She fell on her ankle and it "popped."

The defendant, Mrs. Jackson, pierced the pleadings when she testified that the floors are waxed with shaved paraffin twice each year — in January and June — that no wax or paraffin had been applied to this floor since June when the injury occurred in September and that there had been no build-up of wax anywhere on the floor, that it was regularly cleaned each week in preparation of the weekend dances, that the floor was prepared for dancing and that on this occasion some 200 people were so using it, none of whom fell save Mrs. Hammonds.

No negligence appears on the part of the defendants, and the grant of summary judgment was proper. *Food Fair v. Mock,* 129 Ga. App. 421 (199 SE2d 820); *Emory University v. Williams,* 127 Ga. App. 881 (195 SE2d 464); *Angel v. Varsity, Inc.,* 113 Ga. App. 507 (148 SE2d 451); *Scott v. Gulf Oil Corp.,* 116 Ga. App. 391 (157 SE2d 526); *W. T. Grant Co. v. Phillips,* 116 Ga. App. 650 (158 SE2d 312). While summary judgment is generally inappropriate for negligence actions because a genuine

issue of fact remains, yet if from all that is presented it appears that there was an absence of negligence on the part of the defendant it is appropriate. *Parson v. Central of Georgia Railway Co.,* 129 Ga. App. 218 (199 SE2d 396); *Teppenpaw v. Blaylock,* 126 Ga. App. 576 (191 SE2d 466). That is the situation here.

*Judgment affirmed. Bell, C. J., Quillian, Clark, Stolz and Webb, JJ., concur. Pannell, P. J., concurs specially. Deen, J., concurs in the judgment. Evans, J., dissents.*

ARGUED APRIL 5, 1974 — DECIDED JULY 12, 1974 — REHEARING DENIED JULY 31, 1974 — ▮▮▮▮▮▮▮▮

*Drew & Jones, Don M. Jones, Richard J. Azar, Jr.,* for appellant.
*Walter O. Allanson, Albert A. Roberts,* for appellee.

PANNELL, Judge, concurring specially.

I concur in the judgment reached solely on the grounds that the plaintiff assumed the risk of a slippery floor; otherwise, I would be inclined to dissent. See my dissent in *Food Fair, Inc. v. Mock,* 129 Ga. App. 421 (199 SE2d 820).

EVANS, Judge, dissenting.

I respectfully dissent from the majority opinion which holds that a motion for summary judgment was properly granted against plaintiff, who was injured when she fell on a dance floor. She had paid the regular admission charge and was therefore an invitee. She testified that "slippery wax is what I hit" (R. p. 65), and "the floor was extra slippery with wax in that one spot," (R. p. 66), and that when she danced on the floor at this particular spot "my feet leaped out from under me." (R. p. 59)

1. Even if defendant had introduced testimony to contradict plaintiff's testimony, a jury question would have been left; and only a jury could decide the "mystery" — that is, who was telling the truth. *McCarty v. National Life &c. Ins. Co.,* 107 Ga. App. 178, 179 (129 SE2d 408). In no event could the judge take over this function of fact-finding.

2. It is questionable as to whether defendant's testimony actually took issue with plaintiff's testimony. Plaintiff testified the room was dimly lighted and it was almost impossible to *see* what was on the floor. She did not testify that she actually saw the slippery wax on the floor, but simply that her feet came in contact with same and leaped out from under her. Defendant did not deny that the room was dimly lighted or that the room was so dark as to make it extremely difficult to see what was on the floor. She did not deny that the floor was extra slippery with wax at the particular place where plaintiff fell; or that plaintiff's feet hit the slippery wax and leaped from under her. No one testified that any other person was seen dancing at the particular place where defendant fell during the entire evening.

3. How does defendant attempt to remove and blot out the testimony of plaintiff? Defendant submitted her affidavit, from which I quote as follows: "I was personally present, supervising the operation of the Egyptian Ballroom on September 16, 1972 when Mrs. Hammonds fell on the dance floor. I immediately went . . . to determine if anything was present on the floor that would have caused her to fall. There was *no rubbish or trash* on the floor, *nor did I observe* any unusual slick spots on the floor." (R. p. 91.) (Emphasis supplied.) She did not testify that she turned on the lights so she could see the darkened floor. She said there was no *rubbish or trash* on the floor, but plaintiff did not contend *rubbish or trash* caused her to fall. Defendant did not testify there were no "unusual slick spots on the floor" — but rather she testified she did not *observe* unusual slick spots on the floor. The slick spots may well have been there without being visible to her in the darkened condition of the room. Defendant did not *feel the floor* at this place, nor get down on her hands and knees to examine it in order to determine whether it was unusually slick.

Quoting further from defendant's affidavit: "I personally supervise the cleaning of this dance floor each weekend and there *are no slick spots or wax build-ups on said floor.* I have operated the club for ten (10) years and during this ten-year period, there has never been any *liquid wax* of any type placed on this floor. The method

of waxing this floor is: during the months of January and June the floor is waxed with shaved paraffin. There had been no *paraffin* placed on the floor area since June, 1972." (Emphasis supplied.) (R. p. 91.)

4. All ambiguities, conclusions and inferences in the evidence, including defendant's affidavit, must be construed most strongly against movant for summary judgment. *Holland v. Sanfax Corp.,* 106 Ga. App. 1, 5, 9 (126 SE2d 442).

5. The majority opinion asserts that a Mrs. Norris testified that plaintiff fell while she and her partner were dancing a sort of fast dance on the floor, but then states that Mrs. Norris did not really see the fall. Actually, Mrs. Norris testified that "I didn't know it (the fall) until my daughter come and told me. She (plaintiff) was down at the front when she fell and I was at the back." (R. p. 22) The majority opinion also asserts that Mrs. Norris testified that she danced but knew nothing about unusually slick spots on the floor and saw no substance on it. How does this help defendant's case? How does this take issue with plaintiff's testimony?

6. As to defendant's testimony that the dance floor was waxed only in January and June of each year, and no paraffin had been placed thereon since June, 1972, the majority opinion (p. 529), quotes from testimony of Mrs. Bernice Norris, witness for defendant, as follows: "The floor was *waxed,* and had been *each time she had been there for dancing";* thus disputing defendant's testimony. (Emphasis supplied.)

7. Further, as to the testimony of defendant, her affidavit was made on October 5, 1973, whereas the fall took place on September 16, 1972. Therefore the statement that "there *are* no slick spots or wax build-ups on said floor" necessarily relates to the condition of the dance floor on the date of the affidavit, more than a year after the date of the fall. (Emphasis supplied.) *She does not swear there were no slick spots on the floor on the date of the fall.* Defendant testified that there had never been any *liquid wax* placed on this floor, but plaintiff did not testify that it was *liquid wax* that caused her to fall. Defendant then testified that there had been no *paraffin* placed on the floor area since June, 1972; but plaintiff did

not contend that *paraffin* caused the unusually slippery condition of the floor. It is true that paraffin is a waxy substance, but *wax* is a generic term, including many and various kinds of substances and is in no wise limited to paraffin. Webster's Collegiate Dictionary defines *wax* thus: "A substance secreted by bees for constructing the honeycomb; beeswax. It is a dull-yellow solid of agreeable odor, plastic when warm, and melting at about 62-66° C. (143-151° F.). Sp. gr., usually 0.958-0.967 at 15°C. Any of various substances resembling beeswax; specif., Any of a class of substances of plant or animal origin, containing esters and often free fatty acids, free alcohols, and higher hydrocarbons, and including, beside beeswax, spermaceti, carnuba wax, etc. Any of certain solid substances of mineral origin, as ozocerite and paraffin wax. A pliable composition for uniting surfaces, for excluding air, etc.; as, sealing wax. A resinous preparation used by shoemakers for rubbing their thread." Thus, at most, defendant sought to deny the slippery condition was caused by liquid wax or paraffin. She did not deny that some other form of wax — and the various kinds of wax are legion — caused the unusually slippery condition of the floor.

8. The majority opinion (p. 531) asserts that authorities generally hold that the owner "is liable only for his failure to exercise reasonable care to avoid reasonably foreseeable danger to his invitees by keeping the premises *in a reasonably safe condition* for use in a manner consistent with the purposes of the premises." (Emphasis supplied.)

But this statement runs head-on into a respected authority of this court, to wit, *Martin v. Henson,* 95 Ga. App. 715 (99 SE2d 251): "An owner of premises must, as to invitees, exercise ordinary care to *keep the premises safe, not reasonably safe."* (Emphasis supplied.)

9. The majority opinion (p. 531) quotes from one textbook and three foreign authorities, none of which binds the courts of Georgia.

10. The majority opinion (p. 532) asserts that "Plaintiff herself alleges nothing more than a 'slick spot' on the dance floor. She makes charge of no foreign substance on the floor and testified that she saw none."

We must correct this error on part of the majority. Surely the majority opinion overlooks the record because plaintiff testified positively as to a *foreign substance,* to wit, *wax on the floor,* and did not simply say there was a *"slick spot on the dance floor."* She testified *"slippery wax is what I hit."* (R. p. 65), and she further testified *"the floor was extra slippery with wax in that one spot."* (R. p. 66) (Emphasis supplied.) If any ambiguity is found in her testimony, the law says to construe it *in favor of the respondent!*

11. The majority opinion urges that "Defendant, Mrs. Jackson, *pierced the pleadings* when she testified that the floors are waxed with shaved paraffin twice each year — in January and June — that no *wax or paraffin* had been applied to this floor since June when the injury occurred in September . . ." (Emphasis supplied.)

First of all, we are not here concerned with *piercing the pleadings.* This is a case in which both parties submitted *testimony.* Surely the majority can not and will not contend that defendant's testimony — even if contradictory of plaintiff's — (which seems to be the case) *pierces plaintiff's testimony!* We are quite familiar with the term "pierce the pleadings" — but as of this moment we are unfamiliar with any equivalent term for *piercing the evidence.*

12. Next, the quotation above misquotes the record in a very vital part, to wit, in asserting that Mrs. Jackson testified "that no *wax or paraffin* had been applied to this floor since June when the injury occurred in September." This witness did not so testify but instead, testified: "there had been no *paraffin* placed on the floor area since June, 1972." (Emphasis supplied.) She did not testify that *no wax* had been placed on the floor, in that period, but limited her testimony to one particular kind of wax, to wit, paraffin. We have previously pointed out how important the definition of the word "wax" is in this case and that it involves many various kinds of wax, and not paraffin only. Defendant's testimony, in this motion for summary judgment, must be construed most strongly against her, and when she testified that no *paraffin* was placed on the floor since June, her testimony is absolutely limited to *paraffin,* and does not include the many other

types of wax.

And let us not forget that the majority opinion asserts that defendant's witness, Mrs. Bernice Norris, testified "The floor was waxed, *and had been each time she had been there for dancing."* (Emphasis supplied.)

13. Judge Pannell concurs in the majority opinion, but in his specially concurring opinion states that he does so "solely on the grounds that plaintiff assumed the risk of a slippery floor" and cites *Food Fair v. Mock,* 129 Ga. App. 421 (199 SE2d 820). I have studied the *Food Fair* case closely and find no reference to "assumption of risk" therein, and I am not familiar with any Georgia authority which holds that one assumes the risk of injury in dancing upon a dance-hall floor. It has been held that one assumes the risk of trying to beat a rapidly approaching train across the track; or in accompanying one who is about to engage in a drag race; or in walking out onto a frozen pond where the ice is thin. *Yandle v. Alexander,* 116 Ga. App. 165 (156 SE2d 504). Likewise it has been held in certain instances that spectators at athletic contests assume the risk of being injured by batted balls, etc. *Hunt v. Thomasville Baseball Co.,* 80 Ga. App. 572 (56 SE2d 828). But as to dancehalls, I feel sure same are governed by the principle announced in *Martin v. Henson,* 95 Ga. App. 715, supra, to wit: "An owner of premises *must, as to invitees, exercise ordinary care to keep the premises safe, not reasonably safe."* (Emphasis supplied.)

14. Questions as to negligence, what and whose negligence was the proximate and contributing cause of an injury, are all questions for jury determination. *Boatright v. Rich's, Inc.,* 121 Ga. App. 121, 122 (2) (173 SE2d 232).

15. The question of negligence in this case should be solved by a jury, and not by a judge, or judges, on motion for summary judgment.

I therefore respectfully dissent from the majority opinion and vote to reverse the lower court in granting a summary judgment to defendant.