### 54194. RAMSEY v. MERCER.

WEBB, Judge.

William Kenneth Ramsey brought suit against Charles S. Mercer, Jr. for lost wages, medical expenses and $100,000 damages for pain and suffering, alleging that while he was attending a party at Mercer's residence at the invitation of Mercer's daughter he was shot in the stomach by another person at the party with a .22 caliber pistol belonging to Mercer; that the direct and proximate cause of the shooting was the careless and grossly negligent manner in which Mercer left loaded weapons lying around his home with blatant and callous disregard for the safety of other people; and that Mercer knew, or in the exercise of ordinary care should have known, that loaded weapons are inherently dangerous and that such actions constitute negligence per se.

Mercer answered, denying any liability, and subsequently filed a motion for summary judgment based upon five grounds: (1) that there was intervening negligence sufficient to relieve him of liability even if he were negligent; (2) that Ramsey failed to exercise ordinary care for his own safety; (3) that Ramsey assumed the risk of any injury; (4) that because Ramsey had knowledge of any dangers allegedly existing, Mercer owed him no duty with respect to the alleged dangers; and (5) that he was neither the owner nor occupier of the premises within the meaning of Code § 105-401. The trial court granted Mercer's motion for summary judgment, Ramsey appeals, and we affirm.

The facts before the trial court demanded that summary judgment be granted. On June 15, 1975, Mercer, his wife and all of their children with the exception of 18-year-old Carol Anne went on a two-day trip to Florida. Carol Anne, who was employed as a cashier at a Bonanza Steak House, stayed at home with a friend who was going to spend the night with her. After

she left the restaurant that evening several friends came over to her house including the appellant, 18-year-old Ken Ramsey, who also worked at Bonanza. Ramsey left but returned to the Mercer residence at approximately midnight. There was some drinking going on and Ramsey had had five or six beers at his apartment before returning to the party. There were a number of rifles, pistols and other weapons in the house. A friend of Ramsey's, Dennis Graef, picked up a BB pistol and a .22 caliber western style pistol which were lying on the mantel over the fireplace in the family room. Subsequent events are described by Ramsey in testimony from his deposition:

"I was sitting on the couch and he [Graef] walked over and I said, 'Let me see those guns,' and he handed me, apparently the .22 caliber first, the one that shot me. I looked at it and it looked as though it was an antique reproduction of some type gun. I looked to see if there was any way of opening the gun or if it was loaded or whatever and I couldn't see any apparent way, so I handed the gun back to him and I looked at the BB pistol, which was the other pistol. It had a C02 cartridge in it and it appeared not to be loaded either, couldn't hear any BB's or anything rattling in it. Dennis walked across and sat back down in the chair, across the room, and I believe he had snapped a cylinder at some other object before he snapped it at me. He snapped it across the room at me once or twice. At that point I jumped up and ran around into the hallway, which was right at the corner of the couch and snapped the pistol I was holding back at him. At some point I ran across the room and Carol Mercer was standing in the living room and he had jumped up to run across and intercept me. I was behind Carol and he was in front of Carol. Both of us was reaching around snapping the cylinders. I was reaching over Carol and he was reaching up under her or around her from underneath and we heard a shot go off." At that time Ramsey was shot in the stomach by a .22 caliber bullet.

Ramsey was familiar with weapons, having owned a shotgun since he was fifteen and a .357 magnum pistol which was given to him for his eighteenth birthday. He also carried a pistol when making bank deposits in

connection with his job at Bonanza. At the time of the incident, title to the Mercer residence was in Mrs. Mercer.

1. Ramsey relies upon Code § 105-401 which provides that an owner or occupier of land may be liable in damages to an invitee when he fails "to exercise ordinary care in keeping the premises and approaches safe." Even assuming, however, that the evidence establishes that Mercer was an owner or occupier as defined by the Code section, it is clear that Ramsey knew or had reason to know of the dangers involved in roughhousing with someone else's pistols.

" 'The rules governing the land proprietor's duty to his invitee presuppose that the possessor know of the condition and "has no reason to believe that they (his invitees) will discover the condition or realize the risk involved therein." 2 Restatement, Law of Torts, § 343. The basis of the proprietor's liability is his superior knowledge and if his invitee knows of the condition or hazard there is no duty on the part of the proprietor to warn him and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does and then by voluntarily acting, in view of his knowledge, assumes the risks and dangers incident to the known condition. [Cits.]' *Hunt v. Thomasville Baseball Co.,* 80 Ga. App. 572, 573 (56 SE2d 828). See also *Rogers v. Atlanta Enterprises,* 89 Ga. App. 903, 906 (81 SE2d 721). It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted. *Auerbach v. Padgett,* 122 Ga. App. 79, 81 (176 SE2d 193)." *Jeffords v. Atlanta Presbytery, Inc.,* 140 Ga. App. 456, 457 (231 SE2d 355) (1976).

Not only was Ramsey familiar with weapons, but Code Ann. § 26-2908 makes it a criminal offense for anyone to intentionally and without legal justification point or aim a firearm at another "whether the gun or pistol is loaded or unloaded." Insofar as Mercer is concerned, " 'One is not bound to anticipate or foresee and provide against that which is unusual or that which is only remotely and slightly probable.' [Cit.] *Moses v. Chapman,* 113 Ga. App. 845 (1) (149 SE2d 850). Indeed, 'unless and until there be facts or circumstances to indicate to the contrary, it will be presumed that every

person obeys the mandates of the law.' *Clements v. Hollingsworth,* 205 Ga. 153 (5) (52 SE2d 465)." *Wittke v. Horne's Enterprises,* 118 Ga. App. 211, 218 (162 SE2d 898) (1968).

2. It is also clear from the evidence that Mercer was not liable because Ramsey was not an invitee under Code § 105-401, but a social guest and therefore a licensee as contemplated by Code § 105-402. *Laurens v. Rush,* 116 Ga. App. 65 (156 SE2d 482) (1967). The degree of care owed to a social guest is less than that owed to an invitee and the owner of such premises is liable only for wilful or wanton injury. Code § 105-402, supra; *Slaughter v. Slaughter,* 122 Ga. App. 374, 376 (2) (177 SE2d 119) (1970).

While issues of negligence generally should be resolved by a jury (*Ellington v. Tolar Const. Co.,* 237 Ga. 235 (227 SE2d 336) (1976)), here there was no evidence of wilful or wanton conduct on the part of Mercer. Ramsey's own undisputed testimony shows that this was not a case where the owner knew of a hazard and the plaintiff did not: Ramsey's knowledge of the risks involved was as great or greater than Mercer's when he voluntarily engaged in the horseplay with Dennis Graef using Carol Mercer as a shield. Compare *Jeffords v. Atlanta Presbytery, Inc.,* 140 Ga. App. 456, supra. Accordingly, the trial court did not err in granting Mercer's motion for summary judgment.

*Judgment affirmed. Deen, P. J., and Marshall, J., concur.*

ARGUED JULY 6, 1977 — DECIDED
JULY 13, 1977.

*Fred L. Cavalli,* for appellant.
*Neely, Neely & Player, Edgar A. Neely, Jr., John W. Winborne, III,* for appellee.