### 70988. CLARK v. CARLA GAY DRESS COMPANY, INC.
(342 SE2d 468)

BIRDSONG, Presiding Judge.

Barbara Clark appeals the grant of directed verdict to defendant Carla Gay Dress Co. ("Carla Gay"). Clark, an employee at Carla Gay, sued the company for negligence after her estranged husband came onto the work premises and shot her in the head.

We construe the evidence most favorable to appellant Clark, as she was the respondent to the motion for directed verdict (*Ranger Constr. Co. v. Robertshaw Controls Co.*, 166 Ga. App. 679 (305 SE2d 361)), and find the evidence shows the following: Barbara Clark separated from her husband Willie in August 1980. Around that time she told her supervisor Barbara Lancy that her work had slowed because of her domestic problems. She told Lancy that she had filed for divorce, that her husband beat her and would shoot up heroin, that he was a drug addict, and that she did not want to talk to him. (Lancy denied Barbara Clark had told her any of this.)

Spouses and children were allowed to visit briefly the employees at work, and Willie Clark had visited appellant in the dress factory on several occasions. On October 1, 1980, Willie Clark was to go to court because of an incident in which he had broken appellant's grandmother's door. He came to the Carla Gay factory just as appellant was to begin work and went to appellant's sewing machine table. He asked to make arrangements to see their baby. Appellant and her husband talked three or four minutes; it was a calm discussion. Willie Clark left and appellant continued to work at her machine. As he stood at the door or as he passed the supervisor Lancy, Willie Clark asked Lancy if he could speak to appellant. Lancy approached appellant's work table and asked her, "Do you want to see your husband?" Appellant told Lancy this was the day her husband was going to court and that she did not want to see him. Lancy went back to the door where Willie Clark stood and told him appellant would not see him, and asked him to leave. Lancy thought he would leave. Then Willie Clark asked Lancy if he could just talk to appellant one minute. During all these exchanges, Willie Clark was very nice and calm; he was not pushy and was not persistent or insistent. He was "perfectly

peaceable," and that is why Lancy thought he would leave and did not see to it that he did leave. Lancy returned to appellant's work table and told her Willie Clark just wanted to see her for one minute. Appellant replied that she and Willie were getting a divorce and he was going to court that day; that he was trying to talk her out of getting the divorce, and she did not want to talk to him. (Appellant testified that this second request to speak to her husband was not made by Lancy but was made by a fellow employee named Minnie; however, Lancy's version, that she spoke to appellant both times, is more favorable to appellant's case.)

Appellant testified that she thought Lancy had taken care of the situation after she first told Lancy she did not want to speak to her husband. At the second request, appellant went to see her husband at the door; she did not tell anyone that she did not wish to speak to her husband and she did not say anything to anyone. She was afraid to ignore him for fear he might "start a scene," and she decided to approach him calmly. She and he spoke calmly for about seven minutes, and she told him she would arrange for him to see the baby. As she turned to walk away, he grabbed her wrist and pulled a gun out of his shirt and started shooting. Appellant had never known him to have a gun before and was surprised when she saw this gun. She ran into a nearby room but her husband forced his way into the room and got on appellant's back and shot her in the head. *Held*:

We have expounded the rule so often that apparently many defendants believe a plaintiff's equal knowledge will excuse any negligence under any circumstances. Both appellant and Carla Gay contend the equal knowledge rule is relevant to this case. Carla Gay argues that it cannot be liable for negligence in failing to remove Willie Clark from the premises because appellant had at least equal knowledge of his dangerous propensities. Appellant contends the equal knowledge rule, though relevant, does not apply because her second consultation with her husband was not "voluntary."

The equal knowledge rule is not determinative in this case. Carla Gay's potential liability is founded upon the *foreseeability* of the consequences that Willie Clark would commit bodily injury to his wife in these circumstances. The proprietor's liability is based on its failure to exercise ordinary care to keep the premises safe for its invitees (OCGA § 51-3-1); the same duty owed by a master to his servant is but a phase of this ancient codified law. *Nashville, Chattanooga &c. R. v. Hilderbrand*, 48 Ga. App. 140 (172 SE 87). See OCGA §§ 34-7-20; 34-7-23.

We have stated the rule many times with respect to defects, foreign substances on floors, and static dangerous conditions, that "[t]he basis of the proprietor's liability is his superior knowledge and if his invitee knows of the condition or hazard there is no duty on the part

of the proprietor to warn him and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does and then by voluntarily acting, in view of his knowledge, assumes the risks and dangers incident to the known condition. [Cits.]" *Hunt v. Thomasville Baseball Co.*, 80 Ga. App. 572, 573 (56 SE2d 828). See *Hadaway v. Cooner Enterprises*, 172 Ga. App. 113, 114 (321 SE2d 830).

In such cases, liability attaches when the perilous condition is not known to the invitee and is known to the proprietor, or is discoverable by the proprietor in the exercise of ordinary care to inspect and keep the premises safe. *Alterman Foods v. Ligon*, 246 Ga. 620 (272 SE2d 327). If the invitee is as aware of the danger as is the proprietor, but proceeds in spite of such knowledge, he assumes the risks and dangers incident to the known conditions (*Telligman v. Monumental Properties*, 161 Ga. App. 13, 14 (288 SE2d 846)), and is therefore deemed guilty of a failure to exercise ordinary care for himself and cannot recover. OCGA § 51-11-7; *Brownlow v. Six Flags Over Ga.*, 172 Ga. App. 242, 243 (322 SE2d 548); *Rogers v. Atlanta Enterprises*, 89 Ga. App. 903, 906 (81 SE2d 721).

The superior/equal knowledge rule presumes the plaintiff, knowing of the danger, could have avoided the consequences of defendant's negligence with the exercise of ordinary care. It is applicable in those cases where the proprietor allows a dangerous condition to exist, including cases where the alleged dangerous condition is one created by the activities of third persons, so long as the condition is one which the invitee can expect equally with the host, or come to know of, and therefore must anticipate the danger. In other words, the condition even if created by third parties must be such that the invitee can indeed have equal knowledge and either assumes the risk or *can avoid the danger with ordinary care.* See *Ramsey v. Mercer*, 142 Ga. App. 827 (237 SE2d 450) (18-year-old guest at party shot by another guest while both were playing with guns negligently left in house by owner); *Jeffords v. Atlanta Presbytery*, 140 Ga. App. 456 (231 SE2d 355) (swimmer poked in eye by swimmer during "rough" pool game); *Lincoln v. Wilcox*, 111 Ga. App. 365 (141 SE2d 765) (swimmer in pool hit in face by diver); *Hunt v. Thomasville Baseball Co.*, supra (patron struck by baseball at baseball park). In all such cases, if there is proprietor's liability, it is based on his superior knowledge of the existence of a dangerous condition, for "if his invitee knows of the condition or hazard there is no duty on the part of the proprietor to warn him and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does and then by voluntarily acting, in view of his knowledge, assumes the risks and dangers incident to the known condition. [Cits.]" *Ramsey*, supra, p. 829. If the proprietor did not know of the condition at all, he may be liable still

for the negligent failure to exercise a duty to inspect the premises and keep them safe (*Alterman Foods*, supra, pp. 622-623) if the plaintiff likewise was without knowledge and could not have avoided the danger with ordinary care.

The "equal knowledge rule" then is the practical application of a rule that a knowledgeable plaintiff cannot recover damages if by ordinary care he could have avoided the consequences of defendant's negligence. OCGA § 51-11-7.

However, the plaintiff's equal knowledge will not always bar his recovery. Where the plaintiff admits he knew of the dangerous situation but was injured while using ordinary care to avoid it, he is not barred from recovery, for obviously the peril was one he could not with ordinary care escape. *City of Silvertown v. Harcourt*, 51 Ga. App. 160 (3) (179 SE 772); see also *Mann v. Central of Ga. R. Co.*, 43 Ga. App. 708, 713-714 (160 SE 131).

Likewise, an analysis of the parties' relative degrees of knowledge and the proprietor's corresponding duty to warn the plaintiff is meaningless where it is clear that whatever the invitee may have "known" about the dangerous situation, he was unaware of its dangerous consequences or could not exercise any control over those consequences. When the alleged breach of the proprietor's duty to keep the premises safe is based on its negligent failure to protect the invitee from acts and consequences of the acts of a third party which the invitee himself was powerless to prevent by ordinary care, it is of no benefit to ponder whether the invitee knew of the incipient danger, and it would be illogical to excuse the proprietor's negligence merely because the plaintiff invitee was aware of a potential peril he could not escape.

The true basis of liability in such a case is the *foreseeability* of the consequences by the proprietor, which consequences the plaintiff could not avoid with use of ordinary care. Prosser, Law of Torts, Fourth ed., p. 272, § 44.

Thus, in *Shockley v. Zayre of Atlanta*, 118 Ga. App. 672, 673-674 (165 SE2d 179), the store customer was attacked by an acquaintance with a razor, and it was clear the customer knew as much about the attacker's propensities as the proprietor knew, if indeed not more, but there was no evidence the customer could have avoided the attack. We eschewed any discussion of which party "knew" more than the other, and said, "When the conduct of persons on the premises is such that the proprietor from known facts or circumstances should reasonably apprehend danger to other customers, it is his duty to interfere to prevent injury, and the failure to interfere when the proprietor has an opportunity to foresee and prevent injury may constitute negligence. [Cits.]" In that case, we held the proprietor free from liability because it could not foresee the intervening attack which arose out of personal malice against the customer. See *Elliott v. Burk-*

*halter*, 173 Ga. App. 749 (327 SE2d 858) and *Winkler, Inc. v. Vilston N.V.*, 172 Ga. App. 686 (324 SE2d 542) as to the application of the foreseeability rule to questions of proprietors' negligence in failing to protect invitees from conduct of third parties, generally. See also *Warner v. Arnold*, 133 Ga. App. 174, 176-177 (210 SE2d 350), where we held that generally an intervening criminal act by a third party insulates a proprietor from liability, but even an independent criminal act could render the proprietor liable "if the defendant (original wrongdoer) had reasonable grounds for apprehending that such criminal act would be committed" or is "reasonably to be anticipated." Id. p. 177. See also *Lay v. Munford, Inc.*, 235 Ga. 340 (219 SE2d 416) concerning the foreseeability by proprietor of criminal acts, and see *Shockley*, supra, p. 675, which advises that the proprietor is not required to foresee the exact consequences, but only what the reasonably prudent person would have foreseen.

In this case, it is clear the appellant Barbara Clark knew as much if not more than the Carla Gay factory supervisor about her estranged husband's propensities, but, it is equally clear that she did not anticipate this violent physical attack, and it is not clear whether she could have avoided it in any case. Thus, her "equal knowledge" is not dispositive, and resolving the case on that basis avoids the ultimate issue and results only in confusion. Pretermitting her equal knowledge, the seminal issue directly becomes whether the proprietor could have reasonably foreseen the consequences of failing to remove Willie Clark, for if it could not, it is not liable in any event. *Elliott*, supra; *Winkler*, supra; *Warner*, supra; *Shockley*, supra. The evidence in the case, viewed in its light most favorable to appellant, demands a finding that Carla Gay could not reasonably foresee the attack that occurred.

Two months before the attack, appellant had told her supervisor Lancy that her husband had beaten her and would shoot up heroin, yet when he arrived at the factory he was calm and friendly as he had apparently been on other occasions when he visited his wife. Appellant did not tell Lancy or anyone she was afraid of Clark. Indeed, it appears from her testimony that she was *not* afraid he would physically attack her in the factory. She spoke to him calmly for several minutes when he first arrived, and there is no evidence at all that he did or said anything to cause her *or the defendant Carla Gay* to fear for her safety. When he asked to speak to her again, he was very nice and calm, and not pushy, and was "perfectly peaceable." Even then, there is no evidence the appellant was physically afraid of him; she simply feared he might "start a scene." Although she told her supervisor she was getting a divorce and he was going to court, and she did not want to talk to him, she never expressed fear for her safety and never asked that he be removed from the premises. Instead, she went to talk with him again. She had never known him to have a gun and,

after talking to him calmly for about seven minutes the second time, she was surprised when he pulled one out of his shirt.

It is very clear that appellant did not herself foresee the physical danger she was in and we can find no circumstance from which Carla Gay's management should have reasonably foreseen it. It is not a matter of appellant's having equal knowledge of the danger, but rather that Carla Gay could not reasonably foresee any danger because there was in fact no warning or indication of it. As for appellant's suggestion that Carla Gay was negligent in allowing the husband on the premises in the first place, there is no general duty to keep spouses off business premises and Carla Gay did not have notice of the dangerous conduct on the part of the husband *on the occasion in question." Elliott v. Burkhalter*, supra, p. 749.

Directed verdict to the appellee Carla Gay Dress Factory Co. was proper.

*Judgment affirmed. Carley and Sognier, JJ., concur.*

## ON MOTION FOR REHEARING.

On motion for rehearing, appellant Clark rehashes the evidence and insists: "There are no *magic* words that convey a message of fear, violence, crisis and a combination of those. The law gives the appellant the right to the benefit of favorable inferences in the issue of deciding the validity of a directed verdict as here."

As this statement itself indicates, there simply were no "magic words" and no real evidence of warning to Carla Gay leading to foreseeability of violence in this case. We are not authorized to impose upon defendants the responsibility to magically divine the danger which hindsight makes clear.

*Motion for rehearing denied.*

DECIDED JANUARY 6, 1986 —
REHEARING DENIED MARCH 4, 1986 — 

*Irwin M. Levine*, for appellant.
*Palmer H. Ansley, William R. Johnson*, for appellee.