70948. COATES et al. v. MULJI MOTOR INN, INC. et al.
(342 SE2d 488)

BEASLEY, Judge.

On April 28, 1981, the West Laurens High School tennis team registered to stay overnight at the Mulji Motor Inn while in Americus, Georgia, for a tennis tournament. Around 9:00 p.m., the entire tennis team, along with the coach and other adult chaperones, decided to go swimming in the motel pool. At approximately 9:15 p.m., seventeen-year-old Javis Coates, a member of the team, drowned.

No one in the group actually saw how the drowning occurred. One student testified that someone had grabbed and pulled him underwater twice; he had gotten out of the pool to complain to the coach about what he at first thought was an antic, and they then noticed Javis Coates in a fetal position on the bottom of the deep end of the pool. After retrieving Coates from the pool, they unsuccessfully attempted resuscitation.

Coates' parents commenced this action against the appellee, Mulji Motor Inn, Inc. and the coach, alleging that their negligence resulted in the drowning death of Javis. Following trial of the case, the jury returned a verdict against the appellee for $60,000 in favor of the parents; it did not find the coach liable. The trial court, however, subsequently granted the appellee's motion for judgment notwithstanding the verdict, from which this appeal followed.

Most of the material facts involving the circumstances of the drowning were not in dispute. The motel pool measured 20 feet by 40 feet and had a diving board at the deep end. At the time of the drowning, the pool was not equipped with overhead lights or a safety rope separating the deep and shallow ends. The various depths of the water were marked on the sides of the pool. Although an underwater light located in the deep end of the pool was operational, it was not on during the evening of April 28, 1981, and prior to the drowning the motel guests were unaware of its existence. When the group first went swimming, it was dusk but there still was some natural light; additionally, nearby artificial light provided some illumination of the pool area. A low wall partially surrounding the pool may have cast some shadow over the pool. There was some dispute over the clarity of the water and the visibility of the bottom of the pool at the deep end.

Two signs were in place in the immediate pool area, indicating that no lifeguard was provided and that guests swam at their own risk.

1. The appellants contend that the trial court erred in failing to dismiss the appellee's motion for judgment notwithstanding the verdict, because of the almost year-long delay in hearing the motion necessitated by the appellee's failure to obtain the transcript. Where a transcript of evidence is essential for consideration of a motion, but the movant fails to make reasonable efforts to obtain the transcript, the trial court certainly is authorized to exercise its discretion by dismissing the motion. *Miller v. Parks*, 124 Ga. App. 4 (183 SE2d 88) (1971); *Watts v. Six Flags Over Ga.*, 140 Ga. App. 106 (230 SE2d 34) (1976). Here it appears there were inordinate delays in bringing to rest the matter of whether the grieving parents were entitled to the jury-awarded damages following a three-day trial at which the event which took their teenage son's life was microscopically examined. The fact that interest was running on the judgment, if it was to be upheld, should not be the end of the inquiry into whether they were prejudiced by the delay about which they repeatedly complained. The act governing civil procedure requires that it "shall be construed to secure the . . . speedy . . . determination of every action." OCGA § 9-11-1. Under the 1983 Constitution of Georgia, were it applicable then, it might have been argued also that they were constitutionally entitled to "the speedy . . . resolution of (their) disputes . . ." 1983 Const. of Ga., Art. VI, Sec. IX, Par. I.

In the instant case, however, the trial court accepted the appellee's explanation for the delay in obtaining the transcript, and we do not find that acceptance to be an abuse of discretion.

2. "[W]e will labor to retain intact the verdict returned by the jury to whom our system has entrusted the dispensing of justice." *Eddie Parker Interests v. Booth*, 160 Ga. App. 15, 17 (285 SE2d 753) (1981). The case was under review by the trial court because of the defendant Mulji's motion for judgment notwithstanding the verdict. Such " 'may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence or there is insufficient evidence to make a 'one-way' verdict proper, judgment n.o.v. should not be awarded.' " *Church's Fried Chicken v. Lewis*, 150 Ga. App. 154, 159 (256 SE2d 916) (1979). It may not be granted "even where the evidence strongly supports but does not demand a particular finding." *Ayers v. Carter*, 159 Ga. App. 680 (285 SE2d 55) (1981). Questions of negligence are "for the jury except in plain, palpable and indisputable cases," *Palagano v. Georgian Terrace Hotel*, 123 Ga. App. 502, 505 (181 SE2d 512) (1971), "where reasonable minds cannot differ as to the conclusion to be reached." *Mulligan v. Blackwood*, 115 Ga. App. 618, 620 (155 SE2d 680) (1967).

The motel owner was required to exercise ordinary care in keeping the premises safe. OCGA § 51-3-1. He had a duty to guests to afford premises that are reasonably safe for use, and a duty to inspect which would render him liable for injuries caused by defects which would be disclosed by a reasonable inspection. *Palagano*, supra at 505.

In part, "[t]he basis of the proprietor's liability is his superior knowledge, and if his invitee knows of the condition or hazard there is no duty on the part of the proprietor to warn him and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does and then by voluntarily acting in view of his knowledge, assumes the risks and dangers incident to the known condition." *Inglett v. Winn-Dixie*, 168 Ga. App. 192, 194 (308 SE2d 587) (1983); *Purvis v. Holiday Hills Property Owners Assn.*, 163 Ga. App. 387, 388-389 (294 SE2d 592) (1982). It is thus a question of "equal knowledge."

The "knowledge" relates not only to the physical facts, but also to knowledge of the significance of the physical facts. The case of *Robinson v. Western Intl. Hotels*, 170 Ga. App. 812 (318 SE2d 235) (1984) recognizes this distinction and *full* meaning of "superior knowledge." There it was couched: "Thus, the issue is whether Mr. Robinson was aware of the danger inherent in the conditions surrounding the booth, not merely whether he was aware of the existence of the conditions themselves." Id. at 814. The court quoted from *Firestone Service Stores v. Gillen*, 58 Ga. App. 782, 787 (199 SE 853) (1938): " '[K]nowledge of defect' should not be confused with 'knowledge of danger.' " Knowledge includes not only knowledge of the physical condition which can be observed but also an appreciation and comprehension of the danger which the condition presents, and this fuller meaning was what the court applied in *Robinson*.

The rules governing the proprietor's duty to his invitee presuppose that he knows of the condition and "has no reason to believe that they will discover the condition or realize the risk involved therein." 2 Restatement, Law of Torts, § 343. This was quoted with approval in *Ramsey v. Mercer*, 142 Ga. App. 827, 829 (237 SE2d 450) (1977), and *Pound v. Augusta Nat.*, 158 Ga. App. 166, 168 (279 SE2d 342) (1981). In *Pound* it was clearly stated that "in order for appellant to recover, two elements must exist: (1) fault on the part of the owner, and (2) ignorance of the *danger* on the part of the invitee . . ." (Emphasis supplied.) Id. at 168. The relevancy of the dangerousness component of knowledge was involved in *Ga. Farmers' Market Auth. v. Dabbs*, 150 Ga. App. 15 (256 SE2d 613) (1979).

The analysis of the trial court stops short when it concludes that the evidence indisputably shows that the motel owner did not have superior knowledge, because it focuses only on the knowledge which

the decedent would have had of the physical conditions. That is, he could see the signs, the illumination of the pool such as it was, the absence of a safety rope, the shadow cast at nighttime, the cloudy water, the depth of the water at changing intervals. While that appears to be true, the evidence is in dispute with respect to whether the innkeeper and the young guest had equal knowledge of the risks, the danger, the significance and meaning of the physical conditions which existed. That, too, is part of the superior knowledge principle.

Was there any evidence that the motel owner had a superior comprehension of the single or combined effect of the deficiencies in the operation of the pool on the dangers presented? Among those dangers were that there would not be a rope handy to hang on to in case a person could not swim or got into trouble, the swimmer could not be clearly and quickly seen nor perceived from his actions to be in trouble at the bottom of the pool, the swimmer could not clearly see where he was. There was evidence that the motel owner had operated the motel for over a year, had learned how to maintain the pool, knew that the underwater light was there and that it was in part a safety device, knew that there was a steep slope, was experienced in caring for the pool, had observed its use by guests under various conditions, used it himself, and was familiar with its characteristics.

From this background, the jury could find that the innkeeper had superior knowledge of the greater degree of dangerousness, the greater risk, which the physical conditions presented. It is not really a case of patent versus latent physical defect, but rather a case of patent versus latent significance and meaning, i.e., danger, of the defects. The jury was charged on the principles of superior knowledge, assumption of known risk, patent and latent defects, comparative negligence. As to superior knowledge, the court charged: "The basis of liability of a landowner or occupier of land to an invitee of such owner or occupier is his superior knowledge of an unreasonable risk of harm which the invitee either does not, or in the exercise of ordinary care, should not know. The owner or occupier is not liable for injuries resulting from a condition which is readily observable and which should have been seen and appreciated by the invitee before he exposed himself to it, and in such circumstances there is no duty to warn because the invitee has the information which would be conveyed by a warning. There is no necessity to warn against the obvious." As a matter of fact, it was defendants who requested this and other charges on superior knowledge.

Comprehension relates to the quality of the risk, the quantity of the danger. It is the relationship between the physical condition and the person exposed that must be equally known or reasonably knowable by the latter. For example, a grocery shopper and the proprietor may both know a radish is on the floor in the produce section. The

hazard of slipping and falling on it would also be equally known to both, as that danger is obvious. However, the relationship between the lack of a pool light, which the innkeeper knew was equipment that should have been on, and the danger of not being able to detect immediately that a person was at the bottom of the pool in distress, was not necessarily equally known to both parties. For one thing, the innkeeper had the advantage of comparative observation of visibility with and without the light.

We must not forget, of course, that the question of relative knowledge of proprietor and invitee is not to be considered in a vacuum in these cases. Rather, it must be seen in the context of the proprietor's legal duty. The duty of the owner or occupier of premises is "measured by what the prudent man would do under the circumstances, and that whether in terms of 'reasonable care,' or 'ordinary care,' in keeping the premises 'safe' or 'reasonably safe' it is the same." *Hammonds v. Jackson,* 132 Ga. App. 528, 532 (1) (208 SE2d 366) (1974).

*Judgment reversed. Banke, C. J., and Pope, J., concur. Carley, J., concurs in Division 2 and in the judgment. McMurray, P. J., and Benham, J., concur in the judgment only. Deen, P. J., and Birdsong, P. J., dissent. Sognier, J., concurs in the judgment of the dissent.*

DEEN, Presiding Judge, dissenting.

"The law is clear that the basis for an owner's liability for injury occurring to another while on the owner's property is the owner's superior knowledge of the danger or defect which was the proximate cause of the injury . . . [I]f his invitee knows of the condition or hazard, there is no duty on the part of the proprietor to warn the invitee and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does." *Purvis v. Holiday Hills Property Owners Assn.,* 163 Ga. App. 387, 388-389 (294 SE2d 592) (1982). See also *Jones v. Interstate North Assoc.,* 145 Ga. App. 366 (243 SE2d 737) (1978).

Even where the injury is death, this court must be firm in the application of this rule. "The hardship of the particular case is no reason for melting down the law. For the sake of fixedness and uniformity, law must be treated as a solid, not as a fluid. It must have, and always retain, a certain degree of hardness, to keep its outlines firm and constant. Water changes shape with every vessel into which it is poured; and a liquid law would vary the mental conformation of judges, and become a synonym for vagueness and instability." *Southern Star Lightning Rod Co. v. Duvall,* 64 Ga. 263, 269 (1879).

By adding a test of absolute, subjective awareness of the injured person, the majority opinion has proceeded to melt down the meaning of the term "superior knowledge." Carrying that analysis to its logical

conclusion, a jury question will always exist in cases of this nature; although certain dangers present on a defendant's premises may be as obvious as daylight, that analysis will allow an injured person to court the sympathy of a jury simply by protesting that "Yes, I couldn't help but notice the radish on the floor, but I didn't realize that by placing my foot on the blighted orb I would slip and fall." The point is that, in perhaps a rare display of common sense, the law has always attributed to people the appreciation of certain dangers presented by a known condition, regardless of a particular injured party's individual, subjective awareness. For example, this court has always held, as a matter of law (and perhaps at the risk of denying reality in specific cases), that even a small child appreciates the dangers of natural bodies of water; surely some child has ventured into a natural body of water completely unaware of the risks, and drowned, but this court's adherence to the above principle has been steadfast. This "certain degree of hardness" may be frustrating to those who seek solace in the collection of damages, but it is vital and necessary to maintain a workable uniformity in the law. Although by human measure the circumstances presented by the instant case are less compelling than those of a small child drowning in a lake, the majority opinion unwittingly has abandoned the above fundamental judicial philosophy.

The facts of this case are uncomplicated. Javis Coates, a seventeen-year-old student athlete of normal intelligence, drowned in a motel swimming pool while swimming with his teammates. All of the circumstances at the time, i.e., the lack of lighting, the absence of a safety rope, the degree of water clarity, and the lack of any lifeguard, alleged by the appellants as negligence on the appellee's part, were readily apparent to Javis Coates and the other members of the tennis team. Under these circumstances, the law must attribute to Javis Coates the actual appreciation of the risk. Consequently, the uncontroverted lack of superior knowledge on the part of the appellee proprietor, and the voluntary act of Javis Coates in proceeding to swim despite his knowledge, should absolve the appellee of any liability for the drowning death of Javis Coates. It could be argued that the sage expression of Justice Bleckley is appropriate here: "Any one who seriously doubts the correctness of this ruling may readily solve his doubts by studying law." *Dutton v. State*, 92 Ga. 14, 15 (18 SE 545) (1893).

I believe that the trial court properly granted judgment for the defendant notwithstanding the verdict. The majority opinion errs in holding otherwise, and I must respectfully dissent.

I am authorized to state that Presiding Judge Birdsong joins in this dissent, and that Judge Sognier concurs in the judgment of the dissent.

DECIDED FEBRUARY 18, 1986 —
REHEARING DENIED MARCH 11, 1986 —

*William J. McKenney*, for appellants.
*Morris S. Robertson, W. G. Scrantom, Jr., Mark R. Youmans*,
for appellees.