74415. CUMMINGS et al. v. GRUBB et al.
(363 SE2d 167)

BEASLEY, Judge.
Larry and Barbara Cummings brought an action for the wrongful death of their son, Bryan, against Charles and Dianne Grubb and their son David. The complaint alleged that as a result of the negligence of the Grubbs, Bryan received a wound to his abdomen from which he died.

The Grubbs, by answer, denied the allegations of the complaint and set forth various defenses, including assertions that they were not negligent, that the death of Bryan was a result solely of his own negligence or was an accident, and that any negligence of the defendants was not the proximate cause of any damage to plaintiffs.

There was extensive discovery by both sides, reconstructing what follows. The Grubbs are across-the-street neighbors of the Cummingses whose sons Bryan (age 12) and Jeff (age 16) were friends of David Grubb and frequent visitors at the Grubbs' home. Dianne Grubb had told Larry Cummings that his children were welcome at any time. Between 9:30 and 10:00 on the evening of June 29, 1985, the two Cummings boys were visiting at the Grubbs. The Grubbs' house had a porch-deck with a wooden rail and steps. The porch was several feet above the ground, and in front of it extending approximately to the floor of the porch were several Red Tip Photinia shrubs which a few weeks before had been pruned by Charles Grubb's brother. The branches were cut off but not pointed and many stood straight up.

At the time of the boys' visit it was dark but there was a street light nearby which illuminated the yard. According to one witness the railing, yard and bushes could be seen. There was also a porch light which was turned on by Dianne Grubb but turned off by the visitors on the porch perhaps twice and remained off.

There were five teenagers sitting on the porch conversing, David Grubb, Bryan and Jeff Cummings, Lea Andrews and Greg Dover. They were laughing but not rowdy and engaging in no horseplay or pranks. Bryan was sitting on the porch rail. According to Lea Andrews "[w]e was telling jokes, and Bryan told a joke and flipped his leg over and jumped down and fell on the ground. We was laughing, and it sounded like he laughed once. He jumped up and ran to the middle of the street, ran around in a circle about three times and said, Jeff, it hurts, and then he went home, walked sort of fast." Explaining what happened she related: "It was real fast, he swung his leg over, and it looked like he jumped. He could have fell, but it looked like he jumped." In response to questions she replied that it did not look like Bryan slipped and that in her opinion "he jumped."

The other individuals, with the exception of Greg Dover, did not see anything until Bryan had landed. They related he grunted, it sounded like he got up and then he walked off. They did not realize he was hurt even though he said words to that effect since he often joked about being injured. Greg Dover by deposition related that "the next thing I knew, Bryan had just told a joke and he was laughing, picked his feet up, swung them up and over the railing, and jumped off towards the yard." He stated it was not obvious to him that Bryan had been injured; "He let out a muffled laugh when he landed into the bush. I saw that he landed into the bush, and I didn't think he

was hurt."

When Bryan reached home he told his father he had been injured and revealed a puncture wound in his abdomen. Larry Cummings testified that Bryan told him "my foot slipped and I fell on a stick."[1] An ambulance was called; Bryan was taken to the hospital where he died the following morning.

After discovery, defendants moved for summary judgment which after a hearing was granted by the trial court. Plaintiffs appeal from that judgment.

On appeal, as in the lower court, plaintiffs contend defendants were negligent in that they: consumed alcoholic beverages that evening; encouraged Bryan to jump by example; maintained a loose rail on the porch; failed to keep the porch light on; trimmed the shrubs so that the branches were uneven, sharp and protruding upward; failed to properly supervise their teenage guests and warn them of danger.

As to consuming alcohol the adult defendants freely admitted it, but the evidence was they were not intoxicated and alcohol played no part in the tragic event.

As for setting a bad example, the only prior occasion where anyone jumped over the railing was when Greg Dover vaulted over it. Any negligence on his part could not be attributed to defendants.

The only evidence with regard to defective railing was Lea Andrews' testimony that "three or four weeks before" Dianne Grubb told her and Jeff not to sit on the rail "because some of the boards may be loose." Those at the scene of the incident stated the rail was in good shape; there was nothing to indicate the railing was loose, broken or damaged. The proof establishes that defective railing was not a contributing factor in the injury Bryan received.

The absence of a porch light played a part only insofar as the deceased child's appreciation of danger might be involved. The proof showed Bryan was a frequent guest at the Grubbs' home and of necessity had to be aware of the shrubs.

Whether the negligence of a child under 14 would serve to bar recovery is a question for the jury. See *Ashbaugh v. Trotter*, 237 Ga. 46, 47 (226 SE2d 736) (1976); *Sturdivant v. Polk*, 140 Ga. App. 152, 154 (3) (230 SE2d 115) (1976). But this does not automatically require a denial of summary judgment for if the child's negligence is the sole proximate cause of the injury then there can be no recovery as a

---

[1] This statement was hearsay and inadmissible insofar as it was testified to by one who stood to gain by its admission. *Irby v. Brooks*, 246 Ga. 794, 796 (273 SE2d 183) (1980); *Gentile v. Miller, Stevenson & Steinichen*, 182 Ga. App. 690, 692 (1) (356 SE2d 666) (1987), rev'd on other grounds, 257 Ga. 583 (361 SE2d 383) (1987); *Hodges v. Effingham County Hosp. Auth.*, 182 Ga. App. 173, 176 (3) (355 SE2d 104) (1987). Thus it would not create an issue of fact as to whether Bryan jumped or fell off the porch.

matter of law.

The teenage children were not misbehaving and there are no factors which implicate any supposed failure to supervise in Bryan's death. All the evidence points to the cause of his death based on a sudden impulsive action which any bystander would have been powerless to anticipate or prevent. Even if the deceased had been instructed not to sit on the porch rail it cannot be said that "but for" that failure the incident would not have occurred. The cause was not sitting on the rail but in jumping off into the adjacent shrubbery. Any alleged failure to generally supervise is too remote to be considered a legal cause.

The last issue is whether the trimming of the shrubs created a condition which the defendants had a duty to remedy or of which to give specific warning.

Bryan was a licensee. OCGA § 51-3-2; *Stanton v. Grubb*, 114 Ga. App. 350, 351 (1) (151 SE2d 237) (1966); *Bryant v. Rucker*, 121 Ga. App. 395 (173 SE2d 875) (1970); *Higginbotham v. Winborn*, 135 Ga. App. 753, 755 (1) (218 SE2d 917) (1975). "The occupier is subject to liability to a licensee for injury caused by a condition on the property if the occupier (a) knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to the licensee, and should expect the licensee will not realize the danger; and (b) fails to exercise reasonable care to make the condition safe, or to warn the licensee of the condition and risk involved; and (c) the licensee does not know or have reason to know of the condition and the risk." *Patterson v. Thomas*, 118 Ga. App. 326 (163 SE2d 331) (1968). In *Housing Auth. of Atlanta v. Famble*, 170 Ga. App. 509, 527 (317 SE2d 853) (1984), we compared this test with the one adopted by our Supreme Court regarding artificial conditions highly dangerous to trespassing children. See *Gregory v. Johnson*, 249 Ga. 151, 154 (289 SE2d 232) (1982). Condition (b) of that test is very similar to (a) of the licensee test and reads: "the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children . . ."

Photographs of the shrubs show their limbs were clipped off squarely with no sharp points and no unusual protrusions. As so portrayed, there was no dangerous condition of which the defendants knew or should have known involving an unreasonable risk of harm to Bryan, as a licensee, nor should they have expected him not to have realized the danger so as to require preventive action or a warning on their part. "One is not bound to anticipate or foresee and provide against that which is unusual or that which is only remotely and slightly probable." *Ramsey v. Mercer*, 142 Ga. App. 827, 829 (237 SE2d 450) (1977), quoting earlier cases.

That being true, none of the grounds of negligence involved breach of a duty which could be the proximate cause of Bryan's death and the grant of summary judgment for defendants was authorized.

*Judgment affirmed. McMurray, P. J., and Sognier, J., concur.*

DECIDED NOVEMBER 17, 1987.

*Marshall M. Bandy, Jr.*, for appellants.
*William P. Claxton, F. Gregory Melton*, for appellees.