### 66491. INGLETT v. WINN DIXIE, GREENVILLE, INC.

Birdsong, Judge.
Slip and Fall. Blanche Inglett was a regular customer of a particular grocery store owned and operated by Winn Dixie. Mrs. Inglett lived three doors down the street from the parking lot of the Winn Dixie store. Over several years preceding the incident in question, Mrs. Inglett had walked from her home through an area at the side of the store and thence into the store. After her shopping, she customarily carried her groceries or pushed a grocery cart back up the side area and on to her home. Either employees of the store or she would then return the cart to the store.

The store customarily used two adjacent areas to unload grocery supplies. At the rear of the store was an area used to unload produce. The area to the side of the store (that used by Mrs. Inglett to gain access to the store) was used to unload the heavier grocery supplies such as canned goods and boxed material. It was customary for the trailer making the delivery to be uncoupled from the tractor and the

trailer left in the side area for as much as a day or two while it was being unloaded. Over the years the metal wheels of the trailers had gouged two holes in the macadam. The store personnel were aware of these holes but had taken no steps to fill them in with new asphalt or other filler. The store personnel also were aware that cars parked in this unloading area and that customers walked through the area to get to the store and back to their cars. Mrs. Inglett testified that she knew the location of these two holes and had seen them on many occasions. She even described how the trucks would park while unloading so that one hole would be filled when a truck or trailer was present. Apparently she had walked past the holes with loaded grocery baskets on many occasions.

On the night of the incident in question, Mrs. Inglett was driven to the store by her husband and let out at the front. She completed her shopping and her basket was filled, with some bags stacked on top of each other. When she left the store, she looked for her husband and noted that he was parked at the end of a row of cars in the area to the side of the store. She pushed the basket toward the car. As she approached the car, she realized that the area was somewhat dark. Because the basket was double-stacked with bags, she could not see immediately in front of the basket. Inadvertently, the basket's front wheel ran into one of the holes, causing the basket to tilt. When she attempted to stop the basket from overturning, it fell upon her, pinning her beneath it, causing abrasions and injuries to her ankle and knee or leg.

Contending that Winn Dixie owed a duty to her as an invitee to keep its premises in a reasonably safe condition; that Winn Dixie knew for over two years that the holes were in an area frequently used by its customers; that a Winn Dixie employee double-stacked her basket; and the side area was not as well lighted as it should have been, Mrs. Inglett brought suit against Winn Dixie for her injuries. Countering that Mrs. Inglett had an equal knowledge of the unsafe conditions and that she had assumed any risk in the use of the side area, Winn Dixie moved for directed verdict at the conclusion of the evidence. The trial court granted the motion for directed verdict and Mrs. Inglett brings this appeal thereto. *Held:*

Certain basic principles are clear. The owner of premises has the duty to keep them in a safe condition for invitees. *Burger Barn v. Young,* 131 Ga. App. 828, 829 (207 SE2d 234). However, an owner is not an insurer of an invitee's safety. *Watson v. C & S Bank,* 103 Ga. App. 535, 536 (120 SE2d 62). Moreover, we discern a distinction between emergency conditions existent on an owner's premises and static conditions which are not inherently dangerous in and of themselves. Thus, where an invitee frequently visits premises and is

aware of the usual condition pertaining thereto but encounters an unusual or emergency situation which is also known to the owner, there may be a substantial question of the application of the doctrine of assumption of risk. For example, if a walkway is frequently used by a customer without obstruction, but on one occasion a drain pipe crosses the path so that the walkway is not as usually found by the invitee, and thereafter the customer makes purchases and walks back along the pathway loaded with packages and trips over the drain, liability possibly might attach even though the customer originally stepped over the pipe but then forgot it. See Prosser, Torts, § 61, pp. 392-393.

However, we perceive a different standard where there is a patent and long standing but static defect. We characterize a "static" defect as one which in and of itself is not dangerous. Certainly where there is common knowledge of a break in pavement, the defect standing alone is not dangerous or likely to cause injury until such time as one drives into it or falls into it. " 'The rules governing the land proprietor's duty to his invitee presuppose that the possessor knows of the condition and "has no reason to believe that they (his invitees) will discover the condition or realize the risk involved therein." 2 Restatement, Law of Torts, § 343. The basis of the proprietor's liability is his superior knowledge, and if his invitee knows of the condition or hazard there is no duty on the part of the proprietor to warn him and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does and then by voluntarily acting in view of his knowledge, assumes the risks and dangers incident to the known condition.' " *Rogers v. Atlanta Enterprises,* 89 Ga. App. 903, 906 (81 SE2d 721). Thus we can characterize the rule in relation to a "static condition" as being that the basis of liability of an owner to an invitee who is injured is the superior knowledge of the owner of the existence of a condition that could subject the invitee to an unreasonable risk of injury. *Sutton v. Sutton,* 145 Ga. App. 22, 25 (243 SE2d 310).

In this case it is manifest that Mrs. Inglett had as much knowledge of the two holes in the side loading area as did Winn Dixie. Accordingly, Mrs. Inglett should have known that the holes were a hazard to walking or pushing a cart by or over them and should have exercised ordinary care to avoid them. Particularly is this true in view of the fact she had gone by these holes many times in the past. Mrs. Inglett's knowledge being equal to that of Winn Dixie, Mrs. Inglett failed to show a right to recover. Thus we have no pause in concluding the trial court did not err in directing the verdict. *Backer v. Pizza Inn,* 162 Ga. App. 682 (292 SE2d 562). The same rationale applies to the double-stacking of the basket and the semi-darkened condition of the

side area. We conclude that Mrs. Inglett voluntarily placed herself in the position under the conditions described as constituting fault attributable to Winn Dixie. The trial court did not err in denying the motion for new trial on these grounds.

*Judgment affirmed. Shulman, C. J., concurs. McMurray, P. J., concurs in the judgment only.*

DECIDED SEPTEMBER 12, 1983 —
REHEARING DENIED SEPTEMBER 28, 1983.

*Victor C. Hawk,* for appellant.
*Gould B. Hagler,* for appellee.