## A97A0183. AGGELES v. THEATER OF THE STARS, INC. et al.

(488 SE2d 724)

SMITH, Judge.

Elizabeth Ann Aggeles brought this action against Theater of the Stars, Inc. and Atlanta Landmarks, Inc. seeking damages for injuries she sustained when she fell while descending a stairway at the Fox Theatre (the theater). The trial court granted summary judgment to the theater, and this appeal ensued. Because the alleged hazard was open and obvious, we affirm.

1. The crux of Aggeles's claim is that the handrail she used as she descended the stairs constituted a hazardous condition about which the theater negligently failed to warn invitees. We conclude that the trial court correctly granted summary judgment to the theater because the alleged hazard was an open, obvious, and static condition, " 'and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does and then by voluntarily acting in view of his knowledge, assumes the risks and dangers incident to the known condition.' [Cit.]" *MARTA v. Fife,* 220 Ga. App. 298, 300 (2) (469 SE2d 420) (1996). See also *Gaydos v. Grupe Real Estate Investors,* 211 Ga. App. 811 (440 SE2d 545) (1994).

Just prior to her fall, Aggeles had successfully ascended the stairs using the right handrail. She descended the same stairway by traveling down the opposite side of the stairway, again using the handrail on her right. It is undisputed that the handrails on either side of the staircase are identical in their placement on the wall in relation to the stairs. Although Aggeles testified in her affidavit submitted in opposition to summary judgment that the stairway was inadequately lit, this testimony contradicted her earlier deposition testimony that she had no problem seeing as she ascended the stairs and that the lighting as she descended the stairs was no different than the lighting as she walked up the stairs. No explanation appears for this contradictory testimony found within Aggeles's affidavit, and we will therefore not consider it. *Prophecy Corp. v. Charles Rossignol, Inc.,* 256 Ga. 27 (343 SE2d 680) (1986). As for the expert affidavit submitted by Aggeles reciting that the stairway was inadequately lit, that conclusory affidavit does not contradict Aggeles's testimony that she personally had no problem seeing, regardless of the expert's opinion of the lighting inside the theater. As the trial court concluded, it is clear that "the ending of the handrail five or six steps before the ending of the . . . staircase is an obvious and patent danger which plaintiff could have observed and avoided by the exercise of ordinary care." Consequently, Aggeles cannot recover. See *Fife, Gaydos,* supra.

We note Aggeles's reference to her daughter's testimony that the theater manager acknowledged to her that the theater was "very,

very dark" and that other people had fallen the same evening on which Aggeles's fall occurred. These alleged statements by an agent of the theater do not create a material issue of fact. Even considering the agent's opinion concerning the lighting, Aggeles herself testified on deposition that the lighting on the staircase was adequate to enable her to see. As for the agent's alleged statement that other people had fallen that evening, no evidence was presented that those people fell on the staircase, that their falls occurred in a similar fashion, or that the theater had knowledge of those falls prior to Aggeles's fall. See *Wittenberg v. 450 Capitol Assoc.*, 207 Ga. App. 260, 262-263 (427 SE2d 547) (1993). Although it is true that the record contains an incident report concerning another individual who fell on the stairway while descending "from the mezzanine on the right hand staircase," the report is silent as to the cause of her fall. And in fact, the manager testified by affidavit that during the more than six years he had been employed as house manager, no falls allegedly caused by defects in the railing had occurred on the stairway where Aggeles fell.

2. Aggeles also attempts to impose liability on the theater by pointing to the theater's alleged failure to comply with certain building code regulations. In response to the theater's motion for summary judgment, Aggeles submitted the affidavit of an expert who testified that in her opinion "there were two causes of the fall. The first cause . . . was probably a misstep which was caused by the irregularity in the measurements of the treads and risers which led to gait abnormalities." The expert went on to state that the treads and risers violated the Standard Building Code. The second cause of the fall, according to the expert, "was the lack of a handrail," also in violation of the Standard Building Code. The expert then stated that "several other factors . . . increased the likelihood of a fall on those stairs at that particular location," including allegedly inadequate lighting, and "lack of a defined nosing on the treads." According to the expert, "[w]ithout a defined nosing it is difficult to detect where one step ends and another begins."

This testimony is not persuasive. First, in response to the affidavit, the theater submitted undisputed evidence that its status as a historic landmark exempts it from such regulations.[1] Second, the expert's testimony that Aggeles "probably" fell due to a combination

---

[1] According to the theater's expert, the staircase "is a character defining feature of the Fox Theater as defined by The Secretary of the Interior's Standards for Rehabilitation and Guidelines for Rehabilitating Historic Buildings. . . . As such, the standards mandate that all of the features of [the staircase], including the treads, risers and handrails, must be preserved in their original form, in spite of the fact that they do not comply with the Standard Building Code."

of certain defects is mere conjecture. "[W]hile this witness may have been in a position to testify that the stairway was defective [she] clearly was in no better position than the plaintiff to form an opinion as to whether her fall was caused by one of these defects. Consequently, [the expert's] opinion in this regard must, under the circumstances, be considered wholly speculative and without probative value." *Boyd v. Garden Center,* 197 Ga. App. 198, 200 (2) (397 SE2d 626) (1990).

We note Aggeles's argument, despite undisputed evidence that the theater is exempt from building code regulations, that the theater should be liable because the lighting and handrails on the stairway could have been improved and warning signs "that would warn invitees of the abruptly ending handrails and the uneven treads and risers," could have been placed on or near the staircase. These arguments are without merit. Even assuming that the stairway *could have been improved* in the manner suggested by Aggeles without violating Interior Department guidelines, such improvement was not required. Moreover, it is not disputed that Aggeles successfully ascended the stairs only moments before descending them and that she testified the lighting was adequate for her to see as she walked. It is further undisputed, as evidenced by Aggeles's own argument, that another means of descending the stairs was available to her; she could have used the center railing, which did extend to the bottom of the staircase. Nothing in the record suggests that she was precluded by the theater from using this portion of the stairway. Despite her arguments, Aggeles cannot recover.

*Judgment affirmed. Andrews, C. J., Birdsong, P. J., Beasley and Ruffin, JJ., concur. McMurray, P. J., and Eldridge, J., dissent.*

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent from the affirmance of summary judgment in this case. Plaintiff Elizabeth Ann Aggeles, age 75 years at the time of her injury, brought this tort action against defendants Theater of the Stars, Inc. and Atlanta Landmarks, Inc., d/b/a The Fox Theatre, seeking to recover for personal injuries she sustained when she "fell down a stairwell located in The Fox Theatre [allegedly] as a result of the hazardous and dangerous condition of said stairwell." Specifically, plaintiff fell while descending the Grand Staircase in the main lobby. She contends the premises were dangerous because the outside handrails end with the wall five steps from the bottom step, and this condition was masked by the dim lighting employed in the theater.

Defendants denied the material allegations and moved for summary judgment, contending the alleged hazard was patent, static, and open and obvious. The evidence, viewed in the light most favorable to plaintiff, reveals that the Grand Staircase is divided into

three nearly equal sections approximately 70 inches wide by two center handrails. Consequently, each section has two handrails, one on either side. Plaintiff is "assuming . . . that the rail is what caused [her] to fall[.]" She affirmed she "went up a stairway that was divided by one center rail, and . . . traveled up the right of the same stairway and came down on the left side of the same stairway divided by a center rail. . . ." Plaintiff used the right handrail going up. She "always use[s] the handrail. That's an old habit." She had no problems at all traveling up the steps and did not have any problems seeing. Plaintiff wears glasses but "just need[s] them for reading."

The lighting was not any different on the stairway when plaintiff was going down than it had been when she was going up, although plaintiff deposed that the "stairway and surrounding area . . . was . . . poorly lighted. As [she] descended the stairway, [she] was able to see but, because of the inadequate lighting, it was with some difficulty." Plaintiff kept her "hand on the handrail the entire time [she was] coming down the steps[.]" Plaintiff was "looking ahead of [her]self[,] looking in front of [her]self. That's all. Not right or left or, gee, what's wrong. Just ahead, anticipating to go into the theater." Plaintiff "had it [the handrail] in [her right] hand. [She] didn't see . . . that it [the handrail] ended because [she] assumed that on the other side is from top to bottom. So it would just continue. And [plaintiff] didn't recognize that the wall — because it was [plaintiff's] first time in there — that the wall all would stop there."

Brian Dufries, House Manager of the Fox Theatre, deposed that "for [the] five years [preceding plaintiff's mishap,] no complaints regarding the condition on the stairs where the Plaintiff fell were made." But Brian Dufries also admitted to Melissa Ann Aggeles, plaintiff's daughter, that "the theater was very, very dark. He [also] said other people had fallen. Actually, that evening other people had fallen, but nobody had gotten hurt. . . . [H]e did state very specifically that other people had fallen and that he thought the theater was too dark."

Plaintiff wore rubber-bottom flat shoes. When directly queried: "What about the handrail coming to an end caused [her] to fall," plaintiff replied: "Evidently, I assume I didn't have a grip on it because I don't hold it; I glide my hand. But it wasn't there, and I must have lost balance, I think." Plaintiff "didn't have any footing anymore because there was nothing there that held [her]." She "could not comprehend how [she] could have been so stupid as to not see the rail wasn't continuing. [She] assumed — [she] walked down, and . . . assumed the rail would just continue."

According to the affidavit of Mary Catherine Martin, Restoration Project Manager, the Fox is a registered historic landmark, subject to the Secretary of the Interior's Standards for Rehabilitation & Guide-

lines for Rehabilitating Historic Buildings. "Standard #5 . . . as promulgated by the U. S. Department of the Interior, National Park Service, provides that '(d)istinctive features, finishes, and construction techniques or examples of craftsmanship that characterize a historic property shall be preserved.' . . . The features of The Grand Staircase, including the treads, risers and handrails, were preserved in their original form at the time of the plaintiff's fall . . . as required by [federal] Standards."

Concluding that "[d]efendant[s] had no duty to warn against obvious or patent dangers which may be observed and avoided by the exercise of ordinary care," the trial court granted defendants' motion for summary judgment.

1. In two related enumerations, plaintiff contends the trial court erred in granting summary judgment. She contends material issues of fact remain whether the allegedly hazardous condition was open and obvious and whether she exercised ordinary care for her own safety. I agree and would reverse.

"As pointed out in *Inglett v. Winn Dixie, Greenville*, 168 Ga. App. 192, 193, 194 (308 SE2d 587) [(physical precedent)]: '(w)e discern a distinction between emergency conditions existent on an owner's premises and static conditions which are not inherently dangerous in and of themselves.' There the court noted where an invitee encounters an unusual or emergency situation which is known to the owner, there may be a substantial question as to the application of the assumption of the risk doctrine. However, the court [continued]: '(w)e perceive a different standard where there is a patent and long standing but static defect. We characterize a "static" defect as one which in and of itself is not dangerous.'" *Hadaway v. Cooner Enterprises*, 172 Ga. App. 113, 114 (321 SE2d 830). Based on the record before us, a jury would be authorized to conclude that the fact the wall and outside handrail attached to it did not continue down the final five steps to the ground floor (coupled with the darkness of the area and other patrons also falling that night) amounted to a hazardous condition on the premises, and such condition, while static, was not patent due to the very, very dark conditions of the theater. Consequently, defendants have, in my judgment, failed to establish the non-existence of every material fact. Moreover, plaintiff testified she used the rail to guide herself along the dimly lit staircase. "This testimony is some evidence that [plaintiff] exercised reasonable care for [her] own safety [in descending the Grand Staircase]. [Cit.] The evidence thus did not demand a finding that [plaintiff] failed to exercise reasonable care, ([cit.]); OCGA § 9-11-50, and the [trial court] erred [in granting defendants' motion for summary judgment]." *Barentine v. Kroger Co.*, 264 Ga. 224, 225 (443 SE2d 485).

2. Since I believe the trial court's grant of summary judgment

was incorrect under Georgia common law tort principles, it becomes necessary to determine whether the promulgation of federal standards for the preservation of registered historic sites is tantamount to federal preemption of plaintiff's specific allegation in this case that The Grand Staircase of the Fox Theatre is in violation of local building codes. In my view, the federal standards for historic preservation do preempt common law claims of negligence per se for alleged violations of local building codes conflicting with those federal standards. But those federal standards do not preempt a Georgia common law tort action premised upon the circumstance that defendants operated the theater in an environment too dim and darkly illuminated to see and appreciate the risk posed by the foreshortened handrail in its historically accurate state. See, e.g., *Central of Ga. R. Co. v. Markert*, 200 Ga. App. 851, 852 (3) (410 SE2d 437). Since, in my view, a jury — and not this Court — should determine whether plaintiff failed to exercise ordinary care for her own safety in that dimly illuminated theatre, I respectfully dissent from the affirmance of summary judgment.

I am authorized to state that Judge Eldridge joins in this dissent.

DECIDED JULY 10, 1997 —

*Wheeler & Watson, D. Kevin Wheeler, James A. Watson*, for appellant.

*Gorby & Reeves, Michael J. Gorby, Amanda H. Burri*, for appellees.