A97A0037. PULLEN et al. v. OXFORD et al.
(490 SE2d 478)

SMITH, Judge.

In this slip and fall case, Sally Pullen and her husband brought suit against I. D. Oxford and Oxford Flea Market to recover for injuries incurred by Pullen when she stepped off a sidewalk while exiting the flea market. The trial court granted Oxford's motion for summary judgment, and this appeal ensued. Because we conclude that the trial court correctly granted summary judgment to Oxford, we affirm.

The record shows that Pullen had visited the flea market many times, but had been to the "new side" only once before. The paving ended with the sidewalk, and Pullen claimed that soil around the sidewalk had been washed away, causing a gully containing rocks and cement. She stepped on a rock and twisted her ankle, causing her to fall. Her husband stepped off the sidewalk without incident.

1. The Pullens first assert that the trial court erred in denying their motion to dismiss Oxford's motion for summary judgment as untimely. We do not agree.

USCR 6.6 provides that "[m]otions for summary judgment shall be filed sufficiently early so as not to delay the trial. No trial shall be continued by reason of the delayed filing of a motion for summary judgment." Although Oxford's motion for summary judgment was filed somewhat later than is usual, the record shows that USCR 6.6 was not violated, and the trial court so found. No continuance of the trial was sought or granted because of the motion for summary judgment; "[i]nstead, the trial was obviated by the grant of appellees' motion for summary judgment, which was filed more than 30 days before the scheduled date of trial." *Henrickson v. Pain Control &c. Inst.*, 205 Ga. App. 843, 845 (3) (424 SE2d 27) (1992), rev'd on other grounds 263 Ga. 331 (434 SE2d 51) (1993). The trial court did not err in denying the Pullens' motion.

2. The Pullens contend the trial court erred in finding their claim of negligence per se without merit. They contend that Oxford was negligent per se in that the dropoff from the sidewalk to the surface below was ten inches, violating the Georgia Standard Building Code (1991 ed.), § 1108.3.1, which provides in pertinent part that the height of "risers" shall not exceed 7 3/4 inches. But this ignores the clear language of the Code defining the structural elements in ways that make clear that these specifications have no application here.

Section 1108.3.1 is found in the Code chapter captioned "Means of Egress." It provides that "[m]eans of egress shall consist of continuous and unobstructed paths of travel *to the exterior of a building.*" (Emphasis supplied.) Standard Building Code, § 1101.1.2. Further, although in her brief Pullen refers to the dropoff from the sidewalk curb as a "riser," it cannot reasonably be so construed when the only references to "risers" in the Code are to those found "in stairs." Standard Building Code at § 1108.3.1. The curb is not part of stairs. Neither is the sidewalk a "court," as urged by the dissent.[1]

As long ago as 1848, in *Persons v. Hight*, 4 Ga. 474, 485-486, our Supreme Court held that "[t]he current of authority in this country, at least at the present day, is in favor of reading [s]tatutes according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation." In *Earth Mgmt. v. Heard County*, 248 Ga. 442 (283 SE2d 455) (1981), the Supreme Court held that "[t]his principle remains intact today." Id. at 444. The trial court correctly found that Pullen's "accident did not take place on the 'paths of travel to the exterior of a building,'" and that the specifications in the Code did not apply. The Pullens have presented no evidence that any other statute, regulation, or ordinance was violated, and their allegation of negligence per se must therefore fail.

3. The Pullens maintain that other jury issues remain for adjudication regarding whether Oxford was negligent. We do not agree.

Summary judgment is proper when the moving party shows that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). In this case no material issue of fact remains for jury adjudication; the facts are not in dispute. As a defendant, Oxford may prevail on its motion if it shows an absence of evidence to support at least one essential element of Pullen's case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). To recover, Pullen must show that she fulfilled her duty to exercise ordinary care and avoid those things that might harm her. *Minor v. Super Discount Markets*, 211 Ga. App. 123, 124-125 (438 SE2d 384) (1993). Because Oxford showed that she did not do so, summary judgment was appropriate.

Even if erosion had caused the dropoff from the edge of the curb to become steep and had exposed an uneven surface, this constituted a static condition. Pullen admitted that nothing interfered with her ability to see it or distracted her from looking. The condition was open and obvious. *Crenshaw v. Hogan*, 203 Ga. App. 104, 105 (416

---

[1] The Code defines an "exit court" as "an outside space with building walls on three or more sides and open to the sky." Standard Building Code at p. 24.

SE2d 147) (1992). It is apparent from Pullen's deposition testimony that in stepping off the curb, she relied upon her *expectations* rather than on her senses. Had she looked, she could easily have seen that the dropoff was steeper and more treacherous than she was expecting it to be. In failing to do so, she failed to exercise ordinary care for her own safety. Because Oxford showed the absence of this essential element of Pullen's case, the trial court correctly granted its motion for summary judgment.

*Judgment affirmed. Andrews, C. J., Birdsong, P. J., Ruffin, J., and Senior Appellate Judge Harold R. Banke concur. McMurray, P. J., and Eldridge, J., dissent.*

McMurray, Presiding Judge, dissenting.

I respectfully dissent because I cannot go along with the majority's holding that a private sidewalk, constructed to accommodate entrance to and from a retail store, is not an area covered by Georgia's Standard Building Code (1991 ed.). I also believe that a majority of this Court has once again wrongly usurped the traditional role of the jury in deciding the issue of proximate cause. Sally Pullen's deposition testimony that she did not see the "washed out" furrow at the sidewalk's "dirt" base until it was too late for her to avoid the hazard — as well as her testimony that she "was looking where [she] was going" just before she fell — raises genuine issues of material fact as to whether Mrs. Pullen exercised ordinary care for her own safety.

Viewed under the standard of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474), the evidence reveals the following: Sally Pullen, while visiting a "new side" at Oxford's flea market, broke her ankle after she stepped off a sidewalk and into a rubble-filled "gully" that had "washed out" at the sidewalk's "dirt" base. The sidewalk area where Mrs. Pullen fell "ended right at the end of [one of the flea market's new] buildings." Although Mrs. Pullen "was looking where [she] was going," her perspective before reaching the edge of the sidewalk did not provide a view of the hazard at the sidewalk's base. Mrs. Pullen thus did not see the "washed out" furrow until her foot was in mid-air, falling toward a sunken cluster of "cement and rocks. . . ." Because she had once before visited the flea market's "new side," Mrs. Pullen was "expecting [the dropoff] to be — like it was before." But when she "stepped off, it was too late. There was no stepping back." Mrs. Pullen's left foot hit a rock and twisted. Her ankle cracked.

Mr. and Mrs. Pullen later discovered that the 10-inch drop from the sidewalk's edge to the ground where Mrs. Pullen fell was 2 1/4 inches higher than the maximum height prescribed for "Treads and Risers" in the "MEANS OF EGRESS" chapter of the Standard Build-

ing Code (1991 ed.).[2] This provision, Standard Building Code § 1108.3.1, provides that "[t]he height of [any] riser shall not exceed 7 3/4 inches. . . ."

*Negligence Per Se.* " 'In determining whether the violation of a statute[, regulation] or ordinance is negligence per se as to a particular person, it is necessary to examine the purposes of the legislation and decide (1) whether the injured person falls within the class of persons it was intended to protect and (2) whether the harm complained of was the harm it was intended to guard against. [*Rhodes v. Baker*, 116 Ga. App. 157, 159 (2), 160 (b) (156 SE2d 545).]' [*Potts v. Fidelity Fruit &c. Co.*, 165 Ga. App. 546, 547 (301 SE2d 903)]." *Horney v. Panter*, 204 Ga. App. 474, 475 (2), 476 (420 SE2d 8). The first step of this test is provided in the Standard Building Code's preface. "The purpose of the Standard Building Code is to protect the public's life, health and welfare in the built environment." Standard Building Code (1991 ed.), p. iii. With this perspective, I do not believe it reasonable to say that the sidewalk area where Mrs. Pullen fell is not part of "the built environment" at Oxford's flea market. I believe that any sensible and intelligent reading of the Standard Building Code, refraining from construing its provisions in a way that renders them meaningless, brings Mrs. Pullen within the class of persons the Building Code was intended to protect and her injuries within the harm Building Code, § 1108.3.1 was intended to guard against. See *Union City Bd. of Zoning Appeals v. Justice Outdoor Displays,* 266 Ga. 393, 399 (3) (467 SE2d 875).

In the case sub judice, the trial court found that Mrs. Pullen does not fall within the class of persons Standard Building Code, § 1108.3.1 was intended to protect because the area where she fell is not a "means of egress" as defined by Standard Building Code, § 1101.1.2 (1991 ed.). The trial court reasoned in its summary judgment order as follows: "Section 1108.3.1 of the building code is found in the chapter entitled 'Means of Egress.' The scope of 'means of egress' is to 'consist of continuous and unobstructed [paths] of travel *to the exterior of a building.*' State Building Code, § 1101.1.2 (emphasis added). The record reveals that prior to her fall, [Mrs.] Pullen was traversing the sidewalk in front of the flea market buildings. Her accident did not take place on the 'paths of travel to the exterior of a building. . . . A plain reading of the [1991 Building Code] chapter [entitled, MEANS OF EGRESS,] indicates that the ordinances therein are intended to protect people exiting buildings. As such, [Mrs.] Pullen is not within the class of intended protected people [and

---

[2] Oxford admits that the Standard Building Code (1991 ed.) was adopted in the jurisdiction where Mrs. Pullen was injured. See Standard Building Code (1991 ed.), preface at p. iii.

a] negligence per se analysis is inappropriate. . . ." The majority adopts similar logic, concluding that Standard Building Code, § 1108.3.1 limits "means of egress" to "risers" found in stairs which (as quoted from the majority opinion) are " 'continuous and unobstructed paths of travel *to the exterior of a building.*' (Emphasis supplied.) Standard Building Code, § 1101.1.2."

I believe the trial court and the majority too narrowly define the class of persons Building Code, § 1108.3.1 was intended to protect. This weakness is marked by the trial court's oversight and the majority's disregard of the Building Code's "DEFINITIONS" chapter, Standard Building Code, § 202 (1991 ed.). This section provides as follows: "MEANS OF EGRESS — a continuous and unobstructed way of exit travel from any point in a building or structure to a public way, consisting of three separate and distinct parts: (1) the way of exit access, (2) the exit, and (3) the way of exit discharge. A means of egress comprises the vertical and horizontal ways of travel and shall include the intervening room space, doors, corridors, passageways, balconies, stairs, ramps, enclosures, lobbies, escalators, horizontal exits, courts and yards." Ga. 1991 Building Code, § 202 at p. 29.

Focusing on § 202's language that "means of egress" include "the way of exit discharge" as well as "vertical and horizontal ways of travel [which] shall include . . . courts and yards," I believe that the sidewalk area where Mrs. Pullen fell is a "means of egress" and that Mrs. Pullen is within the class of persons Standard Building Code, § 1108.3.1 was intended to protect. The sidewalk where Mrs. Pullen fell is not an open sidewalk contiguous to public land. See Standard Building Code, § 1108.3.1, exception at p. 236. It is (presumably) a concrete slab or "court" on private property, running along the front of Oxford's place of business, and ending "right at the end of [one of the flea market's new] buildings."[3] And more significantly, the ledge of the sidewalk where Mrs. Pullen fell is physically a vertical "riser" providing direct egress to and from Oxford's adjoining building. Under these circumstances, I believe that the area where Mrs. Pullen fell is a "means of egress" as defined by the Standard Building Code and that the alleged ten-inch drop from the sidewalk where Mrs. Pullen fell violated Standard Building Code, § 1108.3.1's provision that "[t]he height of [any such] riser shall not exceed 7 3/4 inches. . . ." Saying otherwise, in my view, renders meaningless the Standard Building Code's endeavor to regulate common ways of pas-

---

[3] The majority skews this statement by stating (and I quote from the majority opinion) that I think "the sidewalk [area where Mrs. Pullen fell is] a 'court,' " or an " 'exit court' " within the Standard Building Code's strict meaning of that term. This is not my view. I simply use the term "court" to dismiss the majority's narrow view that "means of egress" risers are limited to "those [areas] found in stairs."

sage to and from buildings in the interest of the public's welfare and safety. See *Union City Bd. of Zoning Appeals v. Justice Outdoor Displays,* 266 Ga. 393, 399 (3), supra.

I believe that genuine issues of material fact remain as to whether the rise from the sidewalk where Mrs. Pullen fell exceeded the safety standards prescribed in the Standard Building Code (1991 ed.).

*Proximate Cause.* " '[T]he rule in relation to a 'static condition' as being that the basis of liability of an owner to an invitee who is injured[, as is the circumstance in the case sub judice,] is the superior knowledge of the owner of the existence of a condition that could subject the invitee to an unreasonable risk of injury. (Cit.)' *Inglett v. Winn-Dixie, Greenville,* 168 Ga. App. 192, 194 (308 SE2d 587) (1983)." *Robinson v. Western Intl. Hotels Co.,* 170 Ga. App. 812, 813 (1) (318 SE2d 235). In the case sub judice, Oxford neither contests that Mrs. Pullen was an invitee, nor contends that the "washed out" furrow where she fell was not dangerous. Oxford does not even argue that he lacked knowledge that this area was "washed out" and presented a hazardous condition to his patrons. Oxford asserts only that "[t]his is the case of the proverbial 'you should look before you leap.' " The majority opines similarly, concluding that Mrs. Pullen should have peeked over and inspected the base of the sidewalk before she stepped onto the ground. Although a jury may adopt such a view, I do not think it is reasonable to say — as a matter of law — that invitees must keep constant vigil for dangers that are not openly apparent upon casual visual examination. And to this end, I believe Mrs. Pullen's deposition testimony belies summary adjudication that her own carelessness was the sole proximate cause of her injuries. Such questions are for the jury except in plain, palpable and indisputable cases. See *Atlanta Ob. & Gyn. Group, P.A. v. Coleman,* 260 Ga. 569, 570 (398 SE2d 16).

During Mrs. Pullen's deposition in the case sub judice, Oxford's attorney asked, "So, prior to your stepping off the edge of the sidewalk you did not look to where you were going?" Mrs. Pullen responded, "Yes, I was looking where I was going." Mrs. Pullen explained that she was "expecting [the dropoff] to be — like it was before[, when she visited the 'new side' of the flea market on a prior occasion]." I believe that this testimony, along with the undisputed assertion that the "washed out" furrow was ten inches below the sidewalk's ledge, would authorize a jury's finding that Mrs. Pullen's view of the hazard was obscured until it was too late for her to avoid.

I am authorized to state that Judge Eldridge joins in this dissent.

DECIDED JULY 16, 1997 —
RECONSIDERATION DISMISSED JULY 31, 1997 —

*Salter & Shook, Mitchell M. Shook, Jason A. Craig*, for appellants.

*Newton, Smith, Durden, Kaufold & Rice, Howard C. Kaufold, Jr.*, for appellees.